*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





# MEMORANDUM OPINION

No. 04-09-00759-CR

Esam Asad **AZOUZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CR-1227
Honorable Mary D. Roman, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:      Rebecca Simmons, Justice
            Steven C. Hilbig, Justice
            Marialyn Barnard, Justice

Delivered and Filed:  December 15, 2010

AFFIRMED

Esam Asad Azouz appeals the trial court's judgment of conviction for aggravated assault with a deadly weapon. Azouz contends the evidence is insufficient to support the jury's finding that he used or exhibited a deadly weapon. We affirm the trial court's judgment.

## BACKGROUND

This case grew out of an altercation between Azouz and Mohamed Hafsi at the San Antonio airport. The men were cab drivers and got into an argument when both tried to

maneuver their cabs into a line of cabs waiting to board passengers. Hafsi testified he was in line when Azouz attempted to force his way into the queue. Hafsi got out of his car, walked up to Azouz's cab, and confronted him. Hafsi told the jury he saw Azouz reach for something in his vehicle, then Azouz got out of the car and began swinging his arm at Hafsi. Hafsi covered his face with his hands and he felt Azouz's hand strike his. Hafsi heard something hit the ground and saw Azouz attempt to retrieve the item. A security guard stopped Azouz from doing so. Hafsi identified a multi-purpose tool as the item he saw on the ground after he was struck by Azouz. Hafsi did not suffer any injury as a result of the attack.

Kelvin Smith testified he was a cab driver and present at the airport during the altercation. He told the jury he heard the sound of car horns and some profanity. He walked to the site of the commotion and saw Azouz with a "butterfly" knife in his hand. Smith saw Azouz swing at Hafsi in a cutting motion. When Hafsi attempted to block the blow, Smith saw the knife fall to the ground and saw that the blade was extended. Lofti Sassi, another cab driver, also testified he saw Azouz swing his hand at Hafsi. Sassi said Azouz swung twice at Hafsi. Steven Diaz told the jury he was employed as a security guard at the airport. He responded to a call for a disturbance and saw a knife[1] on the ground. Azouz tried to retrieve the weapon but Diaz stopped him. Diaz stated that when he first saw it on the ground, the blade of the Leatherman was open.

Sergeant Michael Burkowski of the San Antonio Airport police testified he responded to the disturbance call and saw a stainless steel multi-tool with the blade extended on the ground. Sergeant Burkowski stated that Azouz later told him the multi-tool fell out of his car door as he was exiting his vehicle. Sergeant Burkowski testified that, based on his training and his nineteen

---

[1] Diaz also described the object as a silver "Leatherman."

years experience as a police officer, he considered the multi-tool with the blade extended to be a deadly weapon.

Azouz testified that although he had an argument with Hafsi, he never used the multi-tool to threaten Hafsi. Azouz testified that the tool has a blade, a file, a can opener, and a screwdriver, and could be made into a set of pliers. The multi-tool was introduced into evidence for the jury's examination. The tool's knife blade is approximately two and one quarter inches long, and the tool's total length when the blade is extended is six and one-half inches.

## DISCUSSION

Azouz argues the evidence is legally and factually insufficient to support the jury's verdict that he used a deadly weapon to threaten Hafsi. However, after the briefs were filed in this matter, the Court of Criminal Appeals issued its opinion in *Brooks v. State*, No. PD-0210-09, 2010 WL 3894613 (Tex. Crim. App. Oct. 6, 2010). Although only four judges joined the plurality opinion, a majority of the judges agreed it is no longer appropriate to conduct a separate review for factual sufficiency in criminal appeals. *Brooks*, 2010 WL 3894613, at \*14; *id*. at \*15 (J. Cochran concurring). Accordingly, we will review the evidence to determine whether it is legally sufficient under "a proper application of the *Jackson v. Virginia* standard." *Brooks*, 2010 WL 3894613, at \*14. Under that standard, we review the evidence for legal sufficiency by looking at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 729-30 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005). We resolve any inconsistencies in the testimony in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). We must defer to the jury's determination of the weight to be given to contradictory testimonial evidence because resolution of the conflict is

often determined by the jurors' evaluation of the witnesses' credibility and demeanor. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see also Brooks*, 2010 WL 3894613 at *13 ("direct-appeal courts should review a jury's verdict under deferential standards").

Azouz challenges the sufficiency of the evidence to prove he used or exhibited a deadly weapon during the assault. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (West Supp. 2010). "[A]n object that has an obvious purpose apart from causing death or serious bodily injury" is not a *per se* deadly weapon under Texas law. *McCain v. State*, 22 S.W.3d 497, 502 (Tex. Crim. App. 2000); *see* TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (West Supp. 2010). In a particular case, an object may be a deadly weapon if "'in the manner of its use or intended use [it] is *capable* of causing death or serious bodily injury.'" *McCain*, 22 S.W.3d at 503 (quoting TEX. PENAL CODE ANN. § 1.07(a)(17)(B) and adding emphasis). "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PEN. CODE ANN. § 1.07(a)(46) (West Supp. 2010). An object need not actually cause serious bodily injury or death to be a deadly weapon within the meaning of the Penal Code; however, the evidence must establish "the actor intend[ed] a use of the object in which it would be capable of causing death or serious bodily injury." *McCain*, 22 S.W.3d at 503. When no wounds result, or the wounds caused by the weapon do not result in serious bodily injury or death, an object is a deadly weapon only if the State proves it "(1) was capable of causing serious bodily injury; and (2) was displayed or used in a manner that establishes the intent to use the [weapon] to cause death or serious bodily injury." *Lockett v. State*, 874 S.W.2d 810, 814 (Tex. App.—Dallas 1994, pet. ref'd); *see Johnson v. State*, 919 S.W.2d 473, 477 (Tex. App.—Fort Worth 1996, pet. ref'd)

(holding that State must prove "the thing used as a weapon was capable of causing death or serious bodily injury").

Although the item used in this case was designed as a multi-purpose tool, we consider it a knife because the jury apparently credited the witnesses' testimony that the blade was open when Azouz wielded it. The State may establish that a knife was in fact "deadly" through evidence of the nature and use of the knife, including the knife itself or a facsimile of the knife, witnesses' descriptions of the knife's size, shape, and sharpness, appellant's verbal threats, the manner in which the knife was used, and the nature of any wounds caused. *See Lockett*, 874 S.W.2d at 814; *Victor v. State*, 874 S.W.2d 748, 751-52 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). And, although expert testimony is not required to establish that a specific knife is a deadly weapon, "it may still be particularly useful in supplementing meager evidence on the issue in order to meet the sufficiency requirement." *Davidson v. State*, 602 S.W.2d 272, 273 (Tex. Crim. App. [Panel Op.] 1980).

Hafsi testified he covered his face with his hands when Azouz swung at him, and he felt Azouz's hand strike his just before he heard the tool fall to the ground. Two witnesses testified they saw Azouz swing his hand at Hafsi. One of them testified Azouz had an object in his hand and was swinging his hand in a "cutting motion." When Hafsi blocked the blow, the witness saw the object fall to the ground. The object on the ground was the multi-tool with the blade extended, which Sergeant Burkowski testified was a deadly weapon. Viewing the evidence in the light most favorable to the verdict, a reasonable jury could conclude that Azouz used the tool to attack Hafsi in the face and head and that when so used, with the blade extended, the tool was capable of causing serious bodily injury *See, e.g.*, *Banargent v. State*, 228 S.W.3d 393, 399 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (knife held deadly weapon when used to

inflict wounds to neck); *Revell v. State*, 885 S.W.2d 206, 210 (Tex. App.—Dallas 1994, pet. ref'd) (knife held deadly weapon when assailant held knife to victim's throat).

Azouz relies on *Beller v. State*, 635 S.W.2d 739 (Tex. Crim. App. [Panel Op.] 1982) and *Alvarez v. State*, 566 S.W.2d 612 (Tex. Crim. App. [Panel Op.] 1978), to argue the evidence is insufficient. However, both cases are easily distinguished. In *Alvarez*, the defendant was three-to-four feet away when he swung a linoleum knife at an officer, he did not make any contact, and no evidence was introduced about the size of the blade. *Alvarez*, 566 S.W.2d at 614. The Court of Criminal Appeals held the evidence legally insufficient to prove the knife was a deadly weapon. *Id.* Here, Azouz made contact with the victim while wielding a knife with a two and one quarter inch blade. In *Beller*, the weapon used during a robbery was never introduced into evidence, and there was no testimony describing the knife or its size. *Beller*, 635 S.W.2d at 740. The court concluded the evidence was insufficient to prove it was a deadly weapon. *Id.* Here, the weapon was placed in evidence and the jury could evaluate the length, size, and sharpness of the blade.

## CONCLUSION

A rational trier of fact could have found from the evidence that the multi-tool was capable of causing serious bodily injury and that Azouz used it in a manner that established his intent to use it to cause serious bodily injury or death. Accordingly, the evidence is sufficient to support the verdict, and the judgment of the trial court is affirmed.

Steven C. Hilbig, Justice

DO NOT PUBLISH