**Andrew Joseph MORALES, III, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–89–00877–CR.

Court of Appeals of Texas, Houston (1st Dist.).

June 7, 1990.

John Batchan, Jr., Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Lester Blizzard and Carol Davies, Asst. Dist. Attys., Houston, for appellee.

Before SAM BASS, O'CONNOR and DUNN, JJ.

OPINION

DUNN, Justice.

This is an appeal from the trial's court affirmative finding of the use of a deadly weapon during the commission of the offense of murder. Appellant complains that the trial court erred in (1) making an affirmative finding of the use of a deadly weapon, and (2) holding that appellant smothered the complainant with a pair of underpants and his hands.

The complainant, Ms. Dionicia Aguilar, was found dead in the bedroom of her home, with a pair of blue underpants around the top of her neck and chin. Her hands were above her head, bound with a pillowcase. The police conducted an investigation to determine who was the last person to see Ms. Aguilar. They were contacted by an anonymous informant, who stated appellant had been with Ms. Aguilar

the night of her murder. The police contacted appellant to discuss the case with him, and he confessed to the murder.

After appellant pled guilty to the murder, the trial court found him guilty, and, after reviewing a presentence investigation report and hearing testimony, assessed punishment at confinement in the Texas Department of Corrections for life.

After sentencing, the trial court made an affirmative finding that:

[Appellant's] act of smothering the complainant in this case with a pair of underpants and [his] hands each constitutes a showing that [appellant] used a deadly weapon during the commission of the offense of murder in this cause.

In his first point of error, appellant complains the trial court erred in finding that appellant's act of smothering complainant with his hands and a pair of underpants constituted the use of a deadly weapon. Appellant asserts the court did not make a finding that, beyond a reasonable doubt, appellant's hands and the deceased's underpants were used in a manner reasonably calculated and likely to produce death or serious bodily injury by the mode and manner of their use.

A deadly weapon is defined as

(A) A firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

TEX.PENAL CODE ANN. § 1.07(a)(11) (Vernon 1974).

■ We agree with appellant's contention that a hand is not a deadly weapon per se. *Ray v. State*, 160 Tex.Crim. 12, 266 S.W.2d 124, 128 (Tex.Crim.App.1954), *overruled on other grounds, Burns v. State*, 388 S.W.2d 690, 697 (Tex.Crim.App.1965) (defendant accused of murdering her child by beating him with her hands). Likewise, a piece of cloth, such as a pair of underpants, is not a deadly weapon per se. *Shockley v. State*, 747 S.W.2d 470 (Tex. App.—Houston [1st Dist.] 1988, no pet.)

(defendant found guilty of using a piece of fabric to strangle his girlfriend to death). However, these objects can become deadly weapons in the manner of their use. *Ray*, 266 S.W.2d at 128; *Shockley*, 747 S.W.2d at 474. Consequently, § 1.07(a)(11) requires the State to show beyond a reasonable doubt that appellant's manner of the use of his hands and the decedent's underpants were such that they were capable of causing death or serious bodily injury. *Morgan v. State*, 775 S.W.2d 403, 406 (Tex.App.— Houston [14th Dist.] 1989, no pet.).

The only person to testify at appellant's punishment hearing was Dr. Vladimir Parungao, assistant medical examiner for Harris County. Dr. Parungao testified that a man of appellant's general physical size, using his hands to apply pressure over a person's mouth and nose to cut off the air supply, could be considered to be using a deadly weapon. Additionally, if underpants were held across an individual's nose and mouth for a period of time sufficient to cut off the supply of air, the underpants could be a deadly weapon, used in that manner.

On cross-examination Dr. Parungao stated:

A: I am saying that the panties was [sic] there because of the imprint of the elastic around the face and mouth. So I said *I have no doubt in my mind* that the panties were there to cause smothering of the body because [sic] elastic imprint was there.

Q: The elastic imprint was there, but you are not telling the judge that you know beyond a reasonable doubt that somebody took their hand with the panties and put it over Ms. Aguilar's nose and mouth; are you? Yes or no.

A: In my mind *I have no doubt* that is what happened.

Q: That the panties were put over her nose and mouth and held with someone's hand?

A: Yes, sir, because, you see, the elastic shows me there was that imprint. The panties was [sic] there around the face, and the bruise on the lower lips told me that this has enough force other than the

panties to cause the bruise. *So I have no doubt in my mind* that there is [sic] something else other than the panties was [sic] put on top of the panties to smother this body.

Q: What you are telling this judge is that someone's hand was put over her nose and mouth, *there is no doubt in your mind* about that; right?

A: That's correct.

Q: But you don't know with absolute certainty that the panties were in that hand, do you? You know the panties might have been around her neck or somthing; you don't know that the panties were in their [sic] hand?

A: Because of the elastic, I know [sic] was around the left side of the face.

Q: Holding the panties and putting it over her nose and mouth, you do not know that beyond a reasonable doubt; do you?

A: *I have no doubt in my mind* the panties [sic] on the face and the mouth and the hand was in front of that.

(Emphasis added.)

The above testimony from Dr. Parungao is sufficient evidence from which a rational trier of fact could have found beyond a reasonable doubt that appellant used his hands and decedent's underpants as deadly weapons. *Morgan*, 775 S.W.2d at 407.

Appellant's first point of error is overruled.

 In his second point of error, appellant complains the evidence is insufficient to support the trial court's holding that appellant smothered Ms. Aguilar with a pair of underpants and his hands. In reviewing the sufficiency of the evidence, we must determine, after viewing the evidence in the light most favorable to the judgment, whether any rational trier of fact could have found beyond a reasonable doubt that appellant smothered Ms. Aguilar with a pair of underpants and his hands. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984).

Dr. Parungao testified that in his expert opinion, the victim died from asphyxiation due to smothering. He stated an object was placed in the decedent's mouth that covered both the mouth and the nose, and thus prevented the body from getting oxygen.

Dr. Parungao also testified that when Ms. Aguilar's body was found, blue underpants were recovered from the top of her neck and chin. There was an irregular imprint of elastic on the left side of Ms. Aguilar's face, near her left jaw, that was consistent with that found on the blue underpants. The location of the imprint was consistent with the underpants having been placed over the mouth or nose of decedent in such a way as to cut off air.

Dr. Parungao found very tiny bleeding around the whites of decedent's eyes and a bruise on the inside of her lower lip. This indicated to Dr. Parungao that pressure was applied from the outside of the mouth to cause the bleeding inside, which was consistent with someone using their hand to apply pressure over the mouth and nose. Dr. Parungao additionally testified that the injuries he found on decedent's body were consistent with someone using their hand to hold the underpants over the nose and mouth to cut off the air supply. There were also indications that Ms. Aguilar struggled against this pressure in an attempt to get air.

We find that in considering the above testimony, a rational trier of fact could have determined that appellant smothered Ms. Aguilar with a pair of underpants and his hands.

Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.